# United States District Court
# for the District of Columbia

| |
|---|
| ANNE DAVIS o/b/o Braeden Davis, |
| Plaintiff |
| v. |
| DISTRICT OF COLUMBIA, |
| Defendant |

Civil Action No. 21-02884-RJL

**SUPPLEMENTAL COMPLAINT**
*(Supplementing the amended complaint filed December 1, 2021 to address matters that have occurred since then)*

**COUNT III**
*(Partial appeal of March 25, 2022 hearing officer's determination)*

59. Plaintiff repeats and realleges the allegations in ¶¶1-46 of the amended complaint as if fully set forth.

60. On October 28, 2021, plaintiff Anne Davis ("Ms. Davis"), acting on behalf of her adult son, Braeden Davis ("Braeden") through a power of attorney granted to her, filed with the Office of Dispute Resolution ("ODR") of the Office of the State Superintendent of Education ("OSSE") a due process complaint against the District of Columbia Public Schools ("DCPS") and OSSE arising from both agencies' failure to implement Braeden's March 29, 2021 individualized education program ("IEP") and refusal to provide the services required by this IEP while they searched for a new residential treatment center ("RTC") placement for Braeden. The case is styled *Braeden T. Davis by Anne and Brantley Davis, Attorneys in Fact v. District of Columbia Public Schools, et al.,* Case No. 2021-0175 ("Case No. 2021-0175").

61. The due process complaint sought the following relief:

    a. Order DCPS or OSSE, as appropriate, to keep Braeden in a safe and appropriate location, and provide his IEP services, while a new RTC is sought.

    b. Alternatively, order DCPS or OSSE, as appropriate, to create an environment capable of implementing Braeden's IEP.

    c. Order DCPS or OSSE, as appropriate, to develop an interim plan to provide services comparable to those required by Braeden's IEP, in an appropriate and safe location, until a place can be secured for him in an appropriate RTC or an appropriate environment is created for him.

    d. Bar DCPS from changing Braeden's placement without complying with all IDEA-mandated procedures.

    e. Order evaluations to determine the compensatory education services to which Braeden will be entitled if he regresses or fails to make appropriate progress as a result of the delay in implementing his IEP.

    f. Award the Davises the reasonable legal fees and other expenses they have incurred in bringing this action.

62. After filing the due process complaint, Ms. Davis asked the assigned hearing officer to issue an interim order directing DCPS and OSSE to comply with the "stay-put" provision in the Individuals with Disabilities Act, 20 U.S.C. §1415(j) ("IDEA") by providing services similar to those found in required by Braeden's IEP, including those found in an RTC. The motion was denied on November 10, 2021.

63. While the "stay-put" motion was pending before ODR, Ms. Davis moved this Court for a temporary restraining order and preliminary injunction, seeking the same relief as had been requested of the administrative hearing officer. That motion was denied on November 19, 2021. An appeal from the denial of the preliminary injunction is pending before the United

2

States Court of Appeals for the District of Columbia Circuit, styled *Anne Davis o/b/o Braeden Davis v. District of Columbia,* Appeal No. 21-7134.

64. On January 3, 2022, the assigned hearing officer held a prehearing conference in Case No. 2021-0175 and defined the issues for decision as:

    a. Was the student's fall 2021 discharge from Community Services for Autistic Adults and Children (CSAAC) a change in placement within the meaning of the IDEA?

    b. Did DPCS and/or OSSE violate IDEA and deny the student a [free appropriate public education] FAPE by failing to respond appropriately to the student's discharge from CSAAC, including by failing to provide a placement comparable to the residential treatment center required by the student's IEP?

    c. What services comparable to those specified in the student's IEP should be provided by DCPS and/or OSSE until the student is accepted by a new residential treatment center (RTC)?

    d. Should DCPS and/or OSSE be ordered to provide services comparable to those required by the student's IEP until a new RTC is identified for him, or to develop a placement for the student if an existing RTC does not accept him within a reasonable time?

65. The hearing officer further identified the relief requested in the due process complaint as:

    a. Order DCPS or OSSE, as appropriate, to keep the student in a safe and appropriate location, and provide his IEP services while a new RTC is sought;

    b. Alternatively, order DCPS or OSSE, as appropriate, to create an environment capable of implementing the student's IEP;

    c. Order DCPS or OSSE, as appropriate, to develop an interim plan to provide services comparable to those required by the student's IEP, in an appropriate and safe location, until a place can be secured in an appropriate RTC or an appropriate environment is created for him; and

    d. Compensatory education for the FAPE denials alleged in the due process complaint.

3

66. ODR held an administrative due process hearing on the due process complaint in Case No. 2021-0175 on March 7, 8, and 11, 2022.

67. As of the time of the administrative hearing, OSSE had not yet found a new RTC for Braeden. A witness testified on OSSE's behalf that OSSE has contacted more than 30 residential facilities since October 1, 2021 but none has accepted Braeden. No formal referrals (meaning that a set of documents was sent) have been made to any residential facility since at least early January 2022, perhaps not since December 2021.

68. Since Braeden was discharged from CSAAC on November 1, 2021, DCPS has issued a monthly "authorization letter" to his parents. These letters authorize the Davises to obtain the following services for Braeden each month:

   a. A maximum of 22.5 weekly hours of tutoring, at a maximum hourly rate of $65;

   b. A maximum of four weekly hours of behavior support services, at a maximum hourly rate of $125;

   c. A maximum of four monthly hours of counseling, at a maximum hourly rate of $90;

   d. A maximum of 10 monthly hours of speech/language therapy, at a maximum hourly rate of $109.43;

   e. A maximum of 12 monthly hours of occupational therapy, at a maximum hourly rate of $130.38; and

   f. A maximum of 160 monthly hours (no more than eight hours per day) of the services of a dedicated aide, at a maximum hourly rate of $40.

69. The monthly "authorization letters" place upon Braeden's parents full responsibility to make all arrangements for the services of the various professionals. They must find and vet each provider, schedule all sessions, discuss with each professional the specific services that will

4

be provided, transport Braeden to all in-person appointments, and provide the technology he needs for all virtual sessions. DCPS's "authorization letters" disclaim responsibility for the quality of the services provided and for any harm caused by any provider the Davises find. DCPS commits in these letters only to pay providers upon receipt of invoices and other supporting documentation submitted after the services have been rendered, and only if DCPS finds the supporting documentation satisfactory.

70. Since Braeden's November 1, 2021 CSAAC discharge, he has received the authorized occupational therapy and support from one dedicated aide. In addition to advancing the cost of the authorized aide hours (because aides will not wait to be paid by DCPS for weeks or months after they have done their work), his parents have paid for additional aide hours for which no reimbursement is currently forthcoming, because Braeden requires continuous aide support, often 2:1, and for far more hours than DCPS has authorized. He has otherwise received less than 25% of the authorized tutoring hours, and none of the other authorized services.

71. Braeden has been denied the authorized services for many reasons. These include:

   a. It has proven too difficult for Braeden's parents to simultaneously tend to Braeden's intensive needs for personal support (including serving as his primary or secondary aides throughout all waking hours) and also make all the arrangements required for him to receive all of the specified services.

   b. The time required for him to transition between providers makes it impossible for him to make effective use of all the authorized services.

   c. Braeden's many and varied interfering behaviors preclude successful delivery of many of the services, particularly those that require in-person sessions, and even virtual services.

   d. It is dangerous to transport him by automobile without sufficient aide support. When being transported he requires, in addition to the driver, two aides for full

|   |   |
|---|---|
|   | safety and to prevent elopement. At least one aide is mandatory, but the absence of the second aide presents safety concerns. |
| e. | Many private professionals (especially those with the high level of expertise and experience needed to address Braeden's complex profile) refuse to work for the DCPS-authorized rates and/or to accept a payment regimen in which they must wait for DCPS to approve their invoices and then issue payment. |

None of these problems would inhibit Braeden's receipt of all IEP-required services if he were in a residential facility, as his IEP requires. His parents, who are not professionals, would not be tasked with serving as his primary providers, schedulers, aides, and supervisors; he would receive all of his IEP-required services from professionals supervised by other professionals; he would receive his services in one place, eliminating the problem of lost time in transportation and the risks inherent in transporting someone who manifests aberrant and dangerous behaviors; and the District would contract directly with the facility and the professionals and would therefore have to address payment issues directly instead of forcing them on Braeden's parents, who lack the resources to engage all of the professionals who should work with their son. Thus, as a direct result of DCPS's refusal to implement Braeden's IEP unless it can find a private facility to do so, Braeden's IEP has been only minimally implemented since November 1, 2021, resulting in academic, behavioral, social/emotional, and functional regression, and thus harm to him.

72. The assigned hearing officer issued his decision in Case No. 2021-0175 on March 25, 2022. A copy of the decision accompanies this supplemental complaint as Exhibit A. In his decision, he reached the following legal conclusions regarding the issues identified for decision (listed in ¶64 above):

a. As to whether the 2021 discharge from CSAAC was a "change in placement" within the meaning of IDEA, the hearing officer concluded that this related solely to the request for stay-put relief and had no bearing on the remaining issues in the case; he therefore declined to revisit the question.

6

      b.      The hearing officer found that with respect to the IEP's determination that the least restrictive environment in which Braeden can be successfully educated is an RTC, neither DCPS nor OSSE had failed to implement Braeden's IEP "as soon as possible" following the CSAAC discharge. He ascribed the failure to offer Braeden a new residential placement solely to the unavailability of private RTCs willing or able to accept him. The hearing officer therefore held that neither DCPS nor OSSE had failed to respond appropriately to the CSAAC discharge.

      c.      The hearing officer combined Issues C and D in his prehearing order. He found that OSSE is not responsible for providing IEP services for Braeden pending his admission to another residential facility, but that since October 31, 2021, DCPS has denied Braeden a FAPE by not itself providing him with services that would approximate his March 31, 2021 IEP "as closely as possible."

73.    The hearing officer ordered the following remedy:

      a.      Within 21 school days of the date of the decision (or by May 2, 2022), and until such time as DCPS/OSSE secure a placement for Braeden at a residential treatment center, DCPS shall ensure that Braeden is provided a temporary year-round special education day program to approximate as closely as possible the other requirements of the March 2021 IEP, as may be amended from time to time, including without limitation a highly structured educational environment with 1:1 supervision; a highly structured behavioral intervention program; a 1:1 dedicated aide for 8 hours per school day; specialized instruction for 22.5 hours per week; speech/language therapy for 360 minutes per month; occupational therapy for 720 minutes per month; behavioral support services for 720 minutes per month and school transportation. DCPS was directed to consider Braeden's parents' views in selecting an appropriate location for these services, which may be, without limitation, a DCPS or other public facility, a nonpublic day school, another private entity or, with the Parents' consent, the Parents' home. If reasonably required to maintain Braeden's safety or the safety of others, DCPS must ensure that he is provided a 1:2 student to staff ratio during all times in the day education program. To the extent that providing the temporary setting requires modification of Braeden's IEP, DCPS shall ensure that his IEP team is convened to review and revise the IEP as appropriate.

      b.      To the extent DCPS has not already authorized funding for such services, upon receipt of documentation which DCPS may reasonably require, DCPS shall promptly reimburse the Davises' reasonable costs for special education and related services required by the March 2021 IEP, which they have obtained for Braeden after October 31, 2021, including without limitation tutoring services, occupational therapy services, dedicated aides and Braeden's transportation to and from such services;

7

  c. Within 21 school days of the date of the decision (or by May 2, 2022), subject to obtaining Braeden's parents' consent, DCPS, in consultation with OSSE shall procure an Independent Education Evaluation (IEE) by a qualified educational consultant, who is experienced in placing students with severe behavioral disabilities in residential treatment facilities, to assess Braeden's residential facility needs, make residential treatment centers inquiries on Braeden's behalf and make recommendations to DCPS and OSSE on residential centers that would be able to provide the services required by Braeden's IEP and would be willing to consider Braeden for admission. In the event that OSSE identifies a suitable residential center location for Braeden before this deadline, DCPS is excused from this requirement.

74. The hearing officer denied the request for compensatory education without prejudice to Braeden's right to renew the request once he is placed in a residential treatment facility. The hearing officer did not address Braeden's compensatory education entitlement if he is never placed in a residential facility (as is likely, as the ruling indefinitely excused DCPS and OSSE from providing one), thus creating the risk that Braeden's compensatory education claim will never ripen into one he can pursue.

75. The hearing officer dismissed the claims against OSSE and dismissed it as a party respondent, but held that this did not relieve OSSE of its ongoing responsibility to identify and then pay the costs for an RTC for Braeden.

76. Except as specifically provided in the March 25, 2022 determination, all other relief for Braeden was denied.

77. Ms. Davis has exhausted any and all required administrative remedies with respect to all issues presented in this case.

8

78. DCPS has not complied with the obligations imposed by the May 25, 2022 determination. Instead of assuming responsibility for the non-residential components of Braeden's IEP and ensuring that he receives all of the specified services, it has continued to issue monthly "authorization letters" to Braeden's parents, perpetuating the situation in which the parents remain fully responsible for providing his educational program and all related services. Contrary to the hearing officer's mandate, DCPS also continues to omit transportation for Braeden and a second dedicated aide from its authorizations. As the hearing officer found, this denies Braeden the free appropriate public education to which he is entitled pursuant to IDEA.

79. DCPS also has not obtained an independent educational evaluation with advice regarding Braeden's residential placement needs and suggestions for residential centers appropriate for him. As with Braeden's programming, DCPS shifted the responsibility to find the required consultant to Ms. Davis.

80. Ms. Davis has identified to DCPS and OSSE potential independent educational consultants to provide the evaluation required by the March 25, 2022 hearing officer's determination and has consented to engaging those consultants. Despite this, DCPS has not procured the required evaluation.

81. On information and belief, no new referrals to RTCs have been made for Braeden since the hearing officer's determination issued on March 25, 2022. OSSE is unlikely to place Braeden in an RTC.

82. Because DCPS has not complied with the hearing officer's determination regarding its interim obligations while the search for a residential placement continues, Braeden still does not receive most of his non-residential IEP services. His skills are deteriorating and his interfering behaviors are increasing and becoming embedded, making it more unlikely that a facility will be found that will accept him.

83. The hearing officer's determination that neither DCPS nor OSSE is required to provide the residential components of Braeden's IEP is against the weight of the evidence, is not supported by the law, and was made in a proceeding in which the hearing officer demonstrated bias in favor of DCPS and OSSE through inconsistent and erroneous procedural and evidentiary rulings that favored the agencies over Braeden. The hearing officer, who serves pursuant to an OSSE contract and owes his continued service as a hearing officer to OSSE's unilateral decisions regarding contract renewal, was particularly deferential to OSSE in his rulings and in his final determination, to Braeden's detriment.

84 An order should be entered partially reversing the March 25, 2022 hearing officer's determination, to the extent that it relieves DCPS and OSSE of the obligation to fully implement Braeden's IEP–including placement in a residential facility. There is no reason why the District cannot directly provide a residential setting and the services Braeden would receive in a residential setting. The determination should also be amended to clarify that Braeden's compensatory education rights remain intact whether or not he is ever placed residentially.

## COUNT IV
### *(Temporary restraining order/preliminary injunction)*

85. Plaintiff repeats and realleges the allegations in ¶¶1-46 of the amended complaint, and ¶¶60-83 of this supplemental complaint, as if fully set forth.

86. Since Braeden's discharge from CSAAC on November 1, 2021, he has made little progress academically and has deteriorated in all functional areas due to failure to fully implement his IEP. This situation will continue indefinitely unless the court intervenes and issues a temporary restraining order and preliminary injunction directing DCPS and OSSE to fulfill their responsibilities to him.

87. Although DCPS is responsible in the first instance for implementing Braeden's IEP, under IDEA OSSE, as the state education agency, must step in if DCPS is unwilling or unable to do so. OSSE has refused to fulfill this responsibility.

88. Orders are needed to direct the District of Columbia ("the District"), through its respective agencies, OSSE and DCPS, to comply with the hearing officer's March 25, 2022 determination by directly providing all services delineated in the hearing officer's order (found at p. 23 of the March 25, 2022 determination).

89. Ms. Davis is likely to succeed on the merits regarding the District's noncompliance with the March 25, 2022 hearing officer determination that orders the District to directly provide all components of Braeden's day program.

90. Braeden will suffer irreparable harm if the District's noncompliance with the March 25, 2022 hearing officer determination that orders the District to directly provide all components of Braeden's day program continues.

91. There will be no detriment to the District from ordering compliance with the March 25, 2022 hearing officer determination that orders the District to provide directly all components of Braeden's day program.

92. The public interest favors compliance with the March 25, 2022 hearing officer determination that orders the District to provide directly all components of Braeden's day program.

93. Ms. Davis is entitled to entry of a temporary restraining order and preliminary injunction to compel the District to comply with the March 25, 2022 hearing officer's determination; specifically, to provide to Braeden a temporary year-round special education program that approximates as closely as possible the non-residential components of his IEP until such time as a residential program is found for him.

### COUNT V
*(Temporary restraining order/preliminary injunction)*

94. Plaintiff repeats and realleges the allegations in ¶¶1-46 of the amended complaint, and ¶¶60-83 of this supplemental complaint, as if fully set forth.

95. The deadline by which DCPS was to have obtained an evaluation by an independent educational consultant that included all of the components specified in the March 25, 2022 hearing officer determination (listed in ¶73(c) above) was May 2, 2022.

12

96. DCPS has not engaged the independent educational consultant and, accordingly, has not obtained the evaluation required by the March 25, 2022 hearing officer determination.

97. On information and belief, OSSE's search for a residential placement has stalled and there is no reasonable prospect that OSSE will find a new residential placement for Braeden unless it obtains outside recommendations and follows through on all recommendations.

98. Orders are needed to direct the District of Columbia ("the District") through its respective agencies, OSSE and DCPS, to comply with the hearing officer's March 25, 2022 determination by obtaining an independent educational evaluation to facilitate Braeden's placement in a residential facility in compliance with the hearing officer's order (found at pp. 23-24 of the March 25, 2022 determination).

99. Ms. Davis is likely to succeed on the merits regarding the District's noncompliance with the March 25, 2022 hearing officer determination that orders the District to obtain an independent educational evaluation.

101. Braeden has suffered and will continue to suffer irreparable harm if the District's noncompliance with the March 25, 2022 hearing officer determination that orders the District to obtain an independent educational evaluation continues.

102. There will be no detriment to the District from ordering compliance with the March 25, 2022 hearing officer determination that orders the District to obtain an independent educational evaluation.

103. The public interest favors compliance with the March 25, 2022 hearing officer determination that orders the District to obtain an independent educational evaluation.

104. Ms. Davis is entitled to entry of a temporary restraining order and preliminary injunction to compel the District to comply with the March 25, 2022 hearing officer's determination; specifically, to obtain an independent educational evaluation.

## COUNT VI
*(Reimbursement legal fees and costs as prevailing parties in Case No. 2021-0175)*

100. Plaintiff repeats and realleges the allegations in ¶¶1-46 of the amended complaint, and ¶¶60-83 of this supplemental complaint, as if fully set forth.

105. Ms. Davis prevailed in Case No. 2021-0175, by obtaining an administrative determination that DCPS denied Braeden a FAPE and orders directing DCPS (in consultation with OSSE) to take corrective action to increase the prospect of finding a residential placement for Braeden and to provide directly an interim educational program for him that includes all elements of the day program in his IEP.

106. As a prevailing party, Ms. Davis is entitled to reimbursement of her reasonable legal fees and non-fee costs, including expert witness fees.

107. Ms. Davis has incurred legal fees and other costs of at least $250,000.00 in presenting the claims upon which she prevailed in Case No. 2021-0175, and is entitled to an award of those fees or such other amount as she may prove at trial.

Wherefore, based upon the foregoing, Ms. Davis demands judgment against defendant as follows, in addition to the judgment demanded in the December 1, 2021 amended complaint:

A. An order partially reversing the portion of the March 25, 2022 hearing officer determination in Case No. 2021-0175 that excused DCPS and OSSE from providing the residential components of Braeden Davis's IEP until they find a private facility that accepts him, no matter how long that takes, and amending the determination to fully preserve Braeden's right to seek compensatory education in the future;

B. Temporary restraining orders and preliminary injunctions ordering the District of Columbia to comply with the portions of the March 25, 2022 hearing officer determination in Case No. 2021-0175 that

   i. Ordered DCPS to directly provide a temporary year-round special education program including a temporary year-round special education day program that includes, at minimum, a highly structured educational environment with 1:1 supervision; a highly structured behavioral intervention program; a 1:1 dedicated aide for 8 hours per school day; specialized instruction for 22.5 hours per week; speech/language therapy for 360 minutes per month; occupational therapy for 720 minutes per month; behavioral support services for 720 minutes per month and school transportation, and 2:1 behavioral support when needed.

   ii. Ordered DCPS, in consultation with OSSE, to procure an independent education evaluation by a qualified educational consultant, who is experienced in placing students with severe behavioral disabilities in residential treatment facilities, to assess Braeden's residential facility needs, make residential treatment centers inquiries on Braeden's behalf and make recommendations to DCPS and OSSE on residential centers that would be able to provide the services required by Braeden's IEP and would be willing to consider Braeden for admission;

C. An award of $250,000.00, representing legal fees and expenses incurred as the prevailing party in successful administrative proceedings and in proceedings to implement the orders entered in her favor, or such other amount as may be proved at trial;

15

D.     Pre- and post-judgment interest on all sums awarded; and

E.     Costs of this action, including reasonable attorney's fees; and

F.     Such other and further relief as the Court deems just and proper.

/s/ *Diana M. Savit*
Diana M. Savit #244070
**SAVIT & SZYMKOWICZ, LLP**
4520 East-West Highway, Suite 700
Bethesda, Maryland 20814
(301) 951-9191
(240) 536-9156 (fax)
dms@savitlaw.com

Charles A. Moran #970871
**MORAN & ASSOCIATES**
1100 H Street, N.W., Suite 260
Washington, D.C. 20005
(202) 450-284
(202) 716-3581 (c)
(202) 478-0781 (fax)
charles.moran@camoranlaw.com

Attorneys for plaintiff