*Exhibit A*

**DISTRICT OF COLUMBIA**
**OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION**
Office of Dispute Resolution
1050 First Street, NE, 3rd Floor
Washington, DC  20002

| | |
|---|---|
| STUDENT,[1] an Adult Student, by and through Attorneys-in-Fact, ) ) ) | |
| Petitioner, ) | Date Issued: March 25, 2022 |
| ) | Hearing Officer: Peter B. Vaden |
| v. ) | Case No: 2021–0175 |
| DISTRICT OF COLUMBIA PUBLIC SCHOOLS and ) ) | Online Video Conference Hearing |
| ) | |
| D.C. OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION, ) ) | Hearing Dates: March 7, 8 and 11, 2022 |
| ) | |
| Respondents. ) ) | |

**HEARING OFFICER DETERMINATION**

**INTRODUCTION AND PROCEDURAL HISTORY**

This matter came to be heard upon the Administrative Due Process Complaint Notice filed by the Petitioner (STUDENT), by his/her attorneys-in-fact (PARENTS) under the Individuals with Disabilities Education Act, as amended (the IDEA), 20 U.S.C. § 1400, *et seq*., and Title 5E, Chapter 5-E30 of the District of Columbia Municipal Regulations ("D.C. Regs.").  In his/her due process complaint, Student alleges that Respondents District of Columbia Public Schools (DCPS) and the D.C. Office of the State Superintendent of Education (OSSE) have denied him/her a free appropriate public education (FAPE) since receiving notice of Student's discharge by RESIDENTIAL TREATMENT CENTER 2 (RTC-2) on October 1, 2021.

---

[1]    Personal identification information is provided in Appendix A.

Case No. 2021-0175
Hearing Officer Determination
March 25, 2022

Petitioner's Due Process Complaint, filed on October 28, 2021, named DCPS and OSSE as Respondents.  The undersigned hearing officer was appointed on October 28, 2021. Also on October 28, 2021, Petitioner filed a motion for an expedited hearing and a motion for an "Automatic Stay Put Injunction."  By orders issued November 11, 2021, I denied both motions.  On November 9, 2021, OSSE filed a motion to be dismissed as a respondent party.  I denied OSSE's motion by order issued November 17, 2021.

My final decision in this case was originally due by December 12, 2021 as to OSSE and by January 11, 2022 as to DCPS.  By order issued December 8, 2021, I granted OSSE's motion to align the final decision dates for OSSE and DCPS.  By orders issued January 3, 2022 and February 15, 2022, I granted the respective continuance motions of DCPS and Petitioner to extend the final decision due date, ultimately to April 1, 2022.

 Instead of holding a resolution session meeting, the parties agreed to try to resolve their dispute through mediation before an Office of Dispute Resolution (ODR) mediator.  On February 7, 2022, ODR informed the hearing officer that those efforts had not produced a settlement.

On January 3, 2022, I convened a telephone prehearing conference with counsel to set the hearing date, identify the issues to be determined and address other prehearing concerns.  Following the prehearing conference, I issued a written prehearing order.

Case No. 2021-0175
Hearing Officer Determination
March 25, 2022

On February 28, 2022, Petitioner filed a motion for partial summary disposition, which I denied by order issued March 4, 2022.

The due process hearing, which was closed to the public, was convened before the undersigned impartial hearing officer on March 7, 8, and 11, 2022.  With consent of the Petitioner, the due process hearing was held on line and recorded, using the Microsoft Teams video conference platform.  FATHER and MOTHER appeared on line for the hearing and were represented by PETITIONER'S COUNSEL and PETITIONER'S CO-COUNSEL.  Respondent DCPS was represented by RESOLUTION SPECIALIST and by DCPS' COUNSEL.  Respondent OSSE was represented by SPECIAL PROGRAMS MANAGER and by OSSE'S COUNSEL.  Petitioner's Counsel and OSSE'S Counsel made opening statements.  DCPS' Counsel waived making an opening.

Petitioner called as witnesses Mother, Father, Tutoring Manager, Special Programs Manager, PRIVATE OCCUPATIONAL THERAPIST (OT), EDUCATIONAL CONSULTANT and SPECIAL EDUCATION ATTORNEY.  DCPS called as witnesses RESOLUTION TEAM DIRECTOR and Resolution Specialist.  OSSE called Special Programs Manager as its only witness.  Petitioner's Exhibits P-1 through P-69 were admitted into evidence, with the exceptions of Exhibit P-22 which was withdrawn, and Exhibits P-4, P-10, P-16, P-49, P-50 and P-66 through P-68, to which I sustained OSSE's and/or DCPS' objections.  DCPS' Exhibits DCPS-1, DCPS-2 (pages 35, 36, 37 and 39 through 50 only) and DCPS-4 through DCPS-18 were admitted into evidence, including

3

Case No. 2021-0175
Hearing Officer Determination
March 25, 2022

Exhibits DCPS-2 and DCPS-6 admitted over Petitioner's objection.  DCPS Exhibit 3 was withdrawn. OSSE's Exhibits OSSE-1 through OSSE-18 were all admitted into evidence over Petitioner's objection.

At the conclusion of Petitioner's case-in-chief, DCPS made an oral motion for a directed finding, in which OSSE joined.  I denied the motion on the record.

After the taking of the evidence, counsel for DCPS requested leave to file written closings by March 18, 2022, which request I granted over Petitioner's objection. Petitioner, and DCPS and OSSE jointly, timely filed written closings.

## JURISDICTION

The hearing officer has jurisdiction under 20 U.S.C. § 1415(f) and D.C. Regs. tit. 5-E, § 3029.

## ISSUES AND RELIEF SOUGHT

The issues for determination in this case, as certified in the January 3, 2022 Prehearing Order, are:

A.  Was the student's fall 2021 discharge from RTC-2 a change in placement within the meaning of the IDEA?

B.  Did DCPS and/or OSSE violate IDEA and deny the student a FAPE by failing to respond appropriately to the student's discharge from RTC-2, including by failing to provide a placement comparable to the residential treatment center required by the student's IEP?

C.  What services comparable to those specified in the student's IEP should be provided by DCPS and/or OSSE until the student is accepted by a new residential treatment center?

Case No. 2021-0175
Hearing Officer Determination
March 25, 2022

D.  Should  DCPS and/or OSSE be ordered to provide services comparable to those required by the student's IEP until a new residential treatment center is identified for him/her, or to develop a placement for the student if an existing residential center does not accept him/her within a reasonable time?

For relief, Petitioner requested that the hearing officer order DCPS or OSSE, as appropriate, to keep the student in a safe and appropriate location, and provide his/her IEP services while a new residential center is sought; alternatively, order DCPS or OSSE, as appropriate, to create an environment capable of implementing Student's IEP; and order DCPS or OSSE, as appropriate, to develop an interim plan to provide services comparable to those required by the student's IEP, in an appropriate and safe location, until a place can be secured for him/her in an appropriate residential center or an appropriate environment is created for him/her.  Petitioner  also seeks an award of compensatory education for the denials of FAPE alleged in the complaint.

## FINDINGS OF FACT

After considering all of the evidence received at the due process hearing in this case, as well as the argument of counsel, my findings of fact are as follows:

1.        Student, an AGE adult, is a resident of the District of Columbia.  At the time of the due process hearing, Student was living at his/her parents' home in the District.  Testimony of Mother.  Student is eligible for special education under the disability classification Multiple Disabilities (MD), based on a combination of concomitant Autism Spectrum Disorder (ASD) and Other Health Impairments (OHI) impairments.  Exhibit P-19.  As a result of decisions in prior due process cases, Student

Case No. 2021-0175
Hearing Officer Determination
March 25, 2022

will remain eligible under the IDEA until at least 2024.  Hearing Officer Notice.

2.      Student's DCPS Individualized Education Program (IEP) was last reviewed on or about March 29, 2021 (March 2021 IEP).  This IEP concluded that, given the severity of Student's disability challenges, Student is "unable to attend school with general education peers" and needs "a highly structured educational and residential environment, with 1:1 supervision and a highly structured behavioral intervention program."  The March 2021 IEP also provided, *inter alia*, for the following services:

- 1:1 dedicated aide for 8 hours per day

- Specialized instruction for 22.5 hours per week

- Speech/Language therapy for 360 minutes per month

- Occupational therapy for 720 minutes per month

- Behavioral support services for 720 minutes per month

Exhibit P-19.  In the Present Levels of Performance section of the Emotional, Social and Behavioral Development area of concern, the IEP states that because of aggressive and self-injurious behaviors, Student requires 2 dedicated staff to maintain his/her safety and the safety of others.  *Id.*

3.      For the 2019-2020 school year, Student was placed by OSSE at RTC-1, a residential treatment center that does not maintain an OSSE Certificate of Approval (COA), after no OSSE-approved residential school accepted Student for admission.  On or about April 4, 2020, RTC-1 discharged Student because it had determined that it

Case No. 2021-0175
Hearing Officer Determination
March 25, 2022

could no longer service him/her.  Exhibit P-45 (Declaration of Special Programs Manager).

4.      In August 2020, OSSE and DCPS secured a residential school placement for Student at RTC-2 in Maryland.  Exhibit P-45.  At RTC-2, Student initially shared a townhouse residence with two other students, each of whom had a dedicated aide. Student experienced verbal and physical aggression with the other students.  After Student came down with the COVID-19 virus, RTC-2 moved Student to a townhouse by him/herself, assisted by two aides.  During the day at RTC-2, there were 2 aides exclusively for Student.  In the evening Student had a 1:1 aide.  After COVID-19 restrictions were imposed, the Parents would take Student out in the community every Sunday for outings.  Testimony of Mother.

5.      On October 1, 2021, RTC-2 provided email notice to DCPS of its decision to discharge Student and proposed a discharge date of October 31, 2021.  This was a unilateral RTC-2 decision.  The discharge decision was not made by Student's IEP team, DCPS, or OSSE.  On October 4, 2021, DCPS provided the notice of upcoming discharge to OSSE.  Exhibit P-45.

6.      Resolution Director contacted the director of RTC-2 to see if it would be possible for Student to remain at the residential center beyond October 31, 2021.  The RTC-2 director said that their discharge date was firm.  Testimony of Resolution Director.  At the request of the parent, DCPS sent an email to the director on October 21,

Case No. 2021-0175
Hearing Officer Determination
March 25, 2022

2021, to request again that RTC-2 extend the  discharge date.  On October 25, 2021, the

Director once again declined to extend the discharge date.  Exhibit P-45.

7.      On October 6, 2021, OSSE convened a virtual meeting with the Parents,

DCPS and RTC-2 representatives to discuss possible ongoing residential placement

locations for Student.  Testimony of Resolution Director.  At the meeting, the

participants discussed the fact that OSSE-approved residential treatment centers, which

serve students in the same age group and disability classification as Student, had all

previously denied Student admission (some multiple times) and that it would be best to

move forward with making referrals to residential programs outside of OSSE's approved

list.  Exhibit P-45.

8.      On October 7, 2021, OSSE sent referrals for Student to 8 residential

centers.  None of these programs accepted Student.  Since then, OSSE has continued to

make referrals to or contact residential programs about placing Student.  Altogether,

since October 2021, Special Programs Manager has contacted over 30 residential

schools seeking a placement location for Student.  Of these schools, at least 20 to 23 did

follow-ups and Special Programs Manager sent them application packets for Student,

including educational records.  None of these programs has accepted Student.  As of the

due process hearing date none of the programs, to which referral packets were sent, was

still reviewing Student for possible admission.  Testimony of Special Programs Manager,

Exhibit P-45.  The Parents have also done whatever they could to identify an ongoing

Case No. 2021-0175
Hearing Officer Determination
March 25, 2022

residential location for Student, without success.  <u>Testimony of Father.</u>

9.      The contacted residential programs have given various reasons for not accepting Student.  These reasons included not accepting out-of-state students, lack of appropriate staff, the severity of Student's behaviors, the unsuitability for Student of dorm-style housing or roommates, Student's age and extended IDEA eligibility and the programs' unwillingness to provide IEP services through age 24.  <u>Testimony of Special Programs Manager.</u>

10.      OSSE continues to hold weekly placement meetings for Student to hear what placement options team members are looking at.  <u>Testimony of Special Programs Manager.</u>

11.       On November 1, 2021, the Parents picked up Student from RTC-2.  The Parents were highly concerned about bring Student back to their home because of concerns for Student's safety and the impact on Student's sibling.  As a short-term solution, the Parents housed Student, at their own expense, at a residential hotel (HOTEL 1) in Virginia beginning November 1, 2022, where Student remained for about 2 months.  At Hotel 1, Student was at all times with a parent or a caregiver.  Following several behavior incidents, including Student's pulling the hotel fire alarm 2 or 3 times, the Hotel 1 management required Student to leave.  <u>Testimony of Father.</u>

12.      After being "evicted" from Hotel 1, the Parents housed Student at Hotel 2, another residential hotel in Virginia.  After 2-3 weeks, on or about January 17, 2022,

following another fire alarm incident which involved a police response, the Hotel 2 management required Student to leave.  From Hotel 2, the Parents took Student directly to DISTRICT HOSPITAL's emergency psychiatric unit, where Student remained for a week.  <u>Testimony of Father.</u>

13.     District Hospital staff attempted, without success, to find a healthcare facility that would admit Student for a short term stabilization period.  <u>Testimony of Mother.</u>  On January 24, 2022, District Hospital discharged Student to the Parents' care.  Since then, Student has lived at the Parents' home.  <u>Testimony of Father, Exhibit P-38.</u>

14.     At the Parents' home, the Parents have set up a bed and television for Student in their basement in order to provide some separation from Student's sibling and the parents.  On a typical day, Father gets Student up in the morning and starts with the learning set-up.  Student's aide arrives around 10:00 a.m.  Mother helps with the learning program and lunch.  Father relieves Mother around 4:00 p.m.  The aide leaves around 6:00 p.m.  Father then stays with Student until Student goes to sleep.  <u>Testimony of Father, Testimony of Mother.</u>

15.     By the third week of October 2021, when it became evident that OSSE would not be able to identify another residential treatment center for Student to move to, after he/she was discharged from RTC-2, DCPS developed an interim services authorization for Student.  The October 21, 2021 authorization authorized the Parents to obtain interim independent services for Student, beginning November 1, 2021, to

Case No. 2021-0175
Hearing Officer Determination
March 25, 2022

include:

>Tutoring – maximum of 22.5 hours per week, including weekends at $65.00 per hour

>Behavior support services – maximum of 4 hours per week, including weekends at $125 per hour

>Counseling – 4 hours per month at $90.00 per hour

>Speech-language pathology – 10 hours per month at $109.43 per hour

>Occupational therapy (OT) – 12 hours per month $130.38 per hour.

On November 9, 2021, DCPS revised the interim services authorization to add a provision for a Dedicated Aide – maximum of 8 hours per day at $40.00 per hour. Beginning December 1, 2022, maximum allowed costs were increased for Tutoring to $71.90 per hour and for Speech-Language Pathology to $114.10 per hour. Since November 2021, DCPS has renewed the independent services authorizations for Student on a month to-month basis. Testimony of Resolution Specialist, Exhibits DCPS-7, DCPS-8.

16.    As of the due process hearing date, much of the DCPS authorized interim independent services for Student by DCPS remain unused. The Parents have used the OT hours, Dedicated Aide hours and a small part of the Tutoring hours. According to Mother, without the support of a therapeutic residential environment, Student does not have the "bandwidth" to handle more services. Due to Student's behavioral challenges, driving Student to locations for more services is not practicable for the Parents. The

Case No. 2021-0175
Hearing Officer Determination
March 25, 2022

Parents have not yet submitted a reimbursement request to DCPS for dedicated aide services. Testimony of Mother.

17.     Tutoring Manager has set up a total of approximately 70.5 hours of tutoring services for Student since November 1, 2021 and has billed DCPS for those services. DCPS has not yet paid for the tutoring services. Testimony of Tutoring Manager. Private OT has provided occupational therapy services to Student and has billed DCPS monthly. DCPS has not yet paid Private OT's invoices. Testimony of Private OT.

18.     On October 28, 2021, Resolution Director informed the Parents by email that Student could receive interim services through DCPS' "Virtual Academy" at CITY SCHOOL 1. Resolution Director wrote that in that setting, Student would receive on-line services in City School 1's virtual Communications and Education Support (CES) classroom, a virtual dedicated aide and related services as closely aligned to Student's IEP as possible. Exhibit P-28. Mother did not follow through on the Virtual Academy proposal because she considered that with Student's behavior challenges, streaming into a virtual classroom at City School 1 was not a viable solution. Testimony of Mother.

19.     On November 2, 2021, while the instant due process case was pending, Petitioner sought relief in the U.S. District Court for the District of Columbia (Case 1:21-cv-02884-RJL ), seeking a Temporary Restraining Order and a Preliminary Injunction under the IDEA's stay-put provision, 20 U.S.C. § 1415(j). On November 19,

Case No. 2021-0175
Hearing Officer Determination
March 25, 2022

2020, U.S. District Judge Richard J. Leon issued an order denying Petitioner's motions.

Exhibit DCPS-1.

## **CONCLUSIONS OF LAW**

Based upon the above findings of fact and argument of counsel, as well as this hearing officer's own legal research, my conclusions of law are as follows:

Burden of Proof

As provided in the D.C. Special Education Student Rights Act of 2014, the party who filed for the due process hearing, Student in this case, shall bear the burden of production and the burden of persuasion, except that where there is a dispute about the appropriateness of the student's IEP or placement, or of the program or placement proposed by the local education agency, the agency shall hold the burden of persuasion on the appropriateness of the existing or proposed program or placement; provided that the petitioner shall retain the burden of production and shall establish a *prima facie* case before the burden of persuasion falls on the agency. For the issues in this case, Petitioner has the burden of persuasion. The burden of persuasion shall be met by a preponderance of the evidence. *See* D.C. Code § 38-2571.03(6).

Analysis

A.   Was Student's fall 2021 discharge from RTC-2 a change in
     placement within the meaning of the IDEA?

On or about October 31, 2022, RTC-2 unilaterally discharged Student from its residential treatment center. DCPS and OSSE both opposed the discharge. Petitioner

Case No. 2021-0175
Hearing Officer Determination
March 25, 2022

apparently raised this issue – whether Student's discharge from RTC-2 amounted to a

change in Student's educational placement  – in support of his/her motion for a stay-put

injunction.  *See* 34 C.F.R. § 300.518(a).  ("[D]uring the pendency of any administrative

or judicial proceeding . . .  unless the State or local agency and the parents of the child

agree otherwise, the child involved in the complaint must remain in his or her current

educational placement." )  Early on in this proceeding, I determined that Student was

not entitled to a stay-put order.  *See* Decision and Order on Petitioner's Motion for

Stay-Put Injunction, November 10, 2021.  In the U.S. District Court action, Case

1:21-cv-02884-RJL, U.S. District Judge Leon denied Petitioner's motion for a temporary

restraining order and a preliminary injunction based on the IDEA's stay-put provision.

Whether RTC-2's discharge of Student was a change in placement has no bearing of the

remaining issues to be decided in this case and I decline to revisit the question.

      B.     Did DCPS and/or OSSE violate IDEA and deny Student a
FAPE by failing to respond appropriately to the student's
discharge from RTC-2, including by failing to provide a
placement comparable to the residential treatment center
required by the student's IEP?

Student's most recent DCPS IEP, updated on or about March 29, 2021 (the

March 2021 IEP) provided, *inter alia*, that given the severity of Student's disability

challenges, Student was "unable to attend school with general education peers" and

needed "a highly structured educational and residential environment, with 1:1

supervision and a highly structured behavioral intervention program."  In the present

levels of performance section of the IEP Emotional, Social, and Behavioral Development

Case No. 2021-0175
Hearing Officer Determination
March 25, 2022

area of concern, the IEP team also noted that because of aggressive and self-injurious

behaviors, Student "requires 2 dedicated staff to maintain [his/her] safety and the safety

of others."

Since August 2020, DCPS and OSSE had placed Student at RTC-2, a residential

treatment center in Maryland.  The parents were apparently satisfied with this

placement.  However, on October 1, 2021, RTC-2 unilaterally notified DCPS that it

intended to discharge Student from its program on October 31, 2021.  When neither

DCPS nor OSSE was able to dissuade RTC-2 from discharging Student, the Parents

moved Student out of RTC-2 on November 1, 2021.

Since receiving RTC-2's October 1, 2021 discharge notice, DCPS and OSSE have

not been able to secure Student's admission to another residential center.  Petitioner

contends that DCPS' and OSSE's failure to provide a comparable residential treatment

center for Student after October 31, 2021 was a denial of FAPE.  DCPS and OSSE

maintain that since receiving RTC-2's October 1, 2021 discharge notice, the agencies

have done everything they can to find another suitable residential treatment center for

Student and their inability, to date, to provide a comparable placement is beyond their

control.

Courts in this jurisdiction and in other judicial circuits have recognized that there

may be situations in which implementation of a student's IEP, as written, has become

impracticable or impossible.  *See, e.g., Brown v. Dist. of Columbia*, Case No.

117CV00348RDMGMH, 2019 WL 3423208, at *16 (D.D.C. July 8, 2019);  *John M. v.*

*Bd. of Educ. of Evanston Twp. High Sch. Dist. 202,* 502 F.3d 708, 715 (7th Cir. 2007);

*Tindell v. Evansville-Vanderburgh Sch. Corp.*, No. 309CV00159SEBWGH, 2010 WL

557058, at \*4 (S.D. Ind. Feb. 10, 2010); *Worthington City Sch. Dist. Bd. of Educ. v.

Moore*, No. 2:20-CV-3155, 2020 WL 4000979, at \*5 (S.D. Ohio July 15, 2020).

In certain situations, the school district's delay in implementing an IEP is not,

ipso facto, a denial of FAPE.  As the Second Circuit Court of Appeals explained in *D.D.

ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503 (2d Cir. 2006), *opinion

amended on denial of reh'g*, 480 F.3d 138 (2d Cir. 2007), the hearing officer must make

a specific inquiry into the causes of the delay:

> Plaintiffs' right to a free appropriate public education requires that their
> IEPs be implemented as soon as possible. "As soon as possible" is, by
> design, a flexible requirement. It permits some delay between when the
> IEP is developed and when the IEP is implemented. It does not impose a
> rigid, outside time frame for implementation. Moreover, the requirement
> necessitates a specific inquiry into the causes of the delay. Factors to be
> considered include, but are not limited to: (1) the length of the delay, (2)
> the reasons for the delay, including the availability of the mandated
> educational services, and (3) the steps taken to overcome whatever
> obstacles have delayed prompt implementation of the IEP.

*D.D., supra* at 513-14.

Since Student returned from RTC-2 on November 1, 2021, a period now

approaching five months, DCPS and OSSE have not identified another residential

treatment center for the student.  The critical factor behind this delay in implementation

is, of course, the unwillingness or inability of any identified residential treatment center

to admit Student.  The record is clear that DCPS and OSSE have worked diligently to

Case No. 2021-0175
Hearing Officer Determination
March 25, 2022

overcome this obstacle.  Altogether, beginning a few days after RTC-2 notified DCPS

that it was discharging Student, OSSE reached out to over 30 residential schools, and

sent follow-up application packets to at least 20 to 23 of those programs which

responded.  OSSE looked for residential programs outside of OSSE's list of approved

schools because most of the OSSE-approved programs had already denied admission to

Student in the past.  Unfortunately, for various reasons, including Student's age and

extended eligibility entitlement and his/her severe behavior challenges, none of the

residential treatment centers which OSSE contacted has accepted Student for

admission.  OSSE's efforts to find a residential placement for Student are ongoing.

Taking account of the apparent lack of near-term availability of residential

treatment centers for Student and the diligent efforts by OSSE to overcome that

obstacle, I conclude that OSSE and DCPS have demonstrated that they have not failed to

implement Student's IEP "as soon as possible." *See* 34 C.F.R. § 300.323(c)(2).  *Cf. Schiff*

*v. Dist. of Columbia*, No. 18-CV-1382 (KBJ), 2019 WL 5683903, at *8 (D.D.C. Nov. 1,

2019) ("District asked ten schools whether they would accept Mr. McDowell, which is

indeed 'prompt' and appropriate action given difficult circumstances.")   I find that

Petitioner has not met his/her burden of persuasion that OSSE or DCPS has failed to

respond appropriately to Student's discharge from RTC-2 or that the agencies' inability,

to date, to provide a placement for Student, comparable to the residential treatment

center required by Student's March 2021 IEP, amounts to a denial of FAPE.

.        C.        What services comparable to those specified in the student's

Case No. 2021-0175
Hearing Officer Determination
March 25, 2022

       IEP should be provided by DCPS and/or OSSE until the
       student is accepted by a new residential treatment center?

D.     Should  DCPS and/or OSSE be ordered to provide services
       comparable to those required by the student's IEP until a new
       residential treatment center is identified for him/her, or to develop
       a placement for the student if an existing residential center does not
       accept him/her within a reasonable time?

Petitioner contends that until the respondents identify another residential placement for Student they are obliged to provide services comparable to those specified in the March 2021 IEP.  DCPS and OSSE argue, on brief, that the IDEA does not require either agency to provide comparable services while the Student is awaiting a location assignment to a new residential treatment center.  I disagree with the respondents.

In *Brown v. Dist. of Columbia, supra*, U.S. Magistrate Judge G. Michael Harvey addressed the situation where according to DCPS, a student's incarceration in federal prison made implementation of the student's IEP impracticable.  Magistrate Judge Harvey pronounced that where implementation of a student's IEP has become impracticable or impossible, "the school district has an obligation to 'provide educational services that approximate the student's . . . IEP as closely as possible.'" *Brown* at *16, n. 18 (citing *John M., supra,* 502 F.3d at 714-15.)  Following the guidance in *Brown,* I find that in the present case, when it became impossible to implement without interruption Student's IEP requirement for a residential placement, DCPS was required to provide services that would approximate the other aspects of the March 2021 IEP "as closely as possible."

To its credit, when DCPS recognized that OSSE would not be able to identify another residential treatment center for Student in time for his/her October 31, 2021 discharge from RTC-2, DCPS promptly offered funding for the Parents to obtain "interim independent services" for Student, including tutoring, behavior support services, counseling, speech-language pathology and OT.  On November 9, 2021, DCPS added a daytime dedicated aide to the independent services authorization.  But, by providing funding for the Parents to obtain IEP services instead of providing services directly to Student, DCPS effectively shifted its burden of providing Student's FAPE to the parents.

Mother testified credibly that to ensure Student received some interim special education and related services after he/she returned from RTC-2, she has been laboring "24/7," providing services required by Student's IEP, including hiring providers, coordinating services, serving as a second aide, interpreting Student's speech for the teacher, and providing transportation.  The IDEA places responsibility for providing these services on DCPS, not the Parents.  *See, e.g., Matthew J. v. Massachusetts Dep't of Educ.*, 989 F. Supp. 380, 393 (D. Mass. 1998) (Local Education Agency unequivocally bears the responsibility for compliance with the IDEA, not the parents); *Stanley C. v. M.S.D. of SW. Allen Cty. Sch.*, 628 F. Supp. 2d 902, 949 (N.D. Ind. 2008) (Responsibility for ensuring that a disabled student receives a FAPE resides with the school district, not the parents); *Rizio v. Dist. of Columbia*, No. CV 21-0597 (ABJ), 2022 WL 59391, at *7 (D.D.C. Jan. 6, 2022) (IDEA places obligation to offer a FAPE on the

Case No. 2021-0175
Hearing Officer Determination
March 25, 2022

District, not on parents.)  I conclude that DCPS denied Student a FAPE after October 31, 2021 by not, itself, providing the student services that would approximate the March 2021 IEP "as closely as possible."

Under District of Columbia law, OSSE is responsible for identifying and paying the costs for a residential treatment center for Student to attend. *See* D.C. Code § 38–2561.03(a), (c).  But pending Student's admission to another residential facility, DCPS as Student's LEA, not OSSE, is charged with providing IEP services to Student.  I find that OSSE cannot be held responsible for DCPS' failure, after October 31, 2021, to provide services to Student to approximate the March 2021 IEP.  *Cf. Chavez ex rel. M.C. v. New Mexico Public Educ. Dept.*, 621 F.3d 1275, 1283 (10th Cir. 2010) (Absent a determination that SEA was providing direct services to student, SEA was not responsible for the matters covered by due process hearings.)

Remedy

In this decision, I have found that DCPS has denied Student a FAPE by not providing him/her appropriate services to approximate the March 2021 IEP following Student's discharge from RTC-2.  When a hearing officer finds that a school district has failed to provide a student with a FAPE, he has "broad discretion" to fashion an appropriate remedy.  *See, e.g., Boose v. District of Columbia*, 786 F.3d 1054, 1056 (D.C.Cir.2015), *citing Florence County School District Four v. Carter*, 510 U.S. 7, 15–16, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993).  Following the guidance in *Brown v. Dist. of Columbia, supra*, for so long as it remains impossible or impracticable for OSSE to place

20

Student in an appropriate residential center, I will order DCPS to ensure that Student is provided some form of a special education day program, reasonably calculated to approximate the other requirements of Student's IEP as closely as possible.

I deny Petitioner's request that DCPS be ordered to "develop a placement" if an existing residential center does not accept Student within a reasonable time.  DCPS and OSSE must continue their diligent efforts to find an appropriate location of services for Student.  But the IDEA does not require that DCPS or OSSE start a new residential treatment center to implement Student's IEP.  *Cf., Schiff*, *supra* at 8. (IDEA does not require "perfect compliance" in providing services to implement a child's IEP.)

The Parents also seek reimbursement from DCPS for their expenses to house student in residential hotels after Student returned from RTC-2 and for other expenses they have incurred.  To the extent that DCPS has not authorized funding for special education and related services required by the March 2021 IEP, including a dedicated aide for 8 hours per day during the school day, DCPS must reimburse the Parents for their expenses for those services specified in the IEP.  With regard to hotel expenses, Petitioner has not cited, and I am not aware of any authority for requiring DCPS to pay for Student's residential hotel lodging after he/she returned to the District of Columbia.

Finally, it appears that OSSE has exhausted all of the residential placement possibilities for Student known to the agency.  OSSE's nonpublic placement expert, Special Programs Manager, testified that there are currently no residential centers, which she has contacted, which are reviewing Student's admission packet.  According to

Case No. 2021-0175
Hearing Officer Determination
March 25, 2022

Educational Consultant, who qualified as an expert in special education needs of adult

students, there are independent educational consultants who specialize in identifying

residential treatment center options for hard-to-place adults, such as Student.  Under

my authority pursuant to 34 C.F.R. § 300.502(d)[2], I will order DCPS, in coordination

with OSSE, to fund an Independent Educational Evaluation of Student by a qualified

educational consultant to assess Student's residential treatment center requirements, to

investigate potentially suitable residential programs not yet contacted by OSSE and to

make recommendations to DCPS and OSSE as to specific residential facilities that would

consider Student's application and be able to offer an appropriate residential setting and

provide the services required by Student's IEP.

In the due process complaint, Petitioner also requested an award of

compensatory education for Student.   "[A]n award of compensatory education must be

reasonably calculated to provide the educational benefits that likely would have accrued

from special education services the school district should have supplied in the first

place." *B.D. v. District of Columbia*, 817 F.3d 792, 797-98 (D.C. Cir. 2016) (internal

quotations and citations omitted.)  Educational Consultant, who also qualified as

Petitioner's compensatory education expert, recommended that Student's need for

compensatory education be evaluated only after Student is successfully placed at

another residential treatment facility.  I find that recommendation to be well-founded

---

[2]       Requests for evaluations by hearing officers.  If a hearing officer requests an
independent educational evaluation as part of a hearing on a due process complaint, the
cost of the evaluation must be at public expense.  34 C.F.R. § 300.502(d)

and I will deny without prejudice Petitioner's request for compensatory education.

## **ORDER**

Based upon the above Findings of Fact and Conclusions of Law, it is hereby

ORDERED:

1.      Within 21 school days of the date of this decision, until such time as DCPS/OSSE, secure a placement for Student at a residential treatment center, DCPS shall ensure that Student is provided a temporary year-round special education day program to approximate as closely as possible the other requirements of the March 2021 IEP, as may be amended from time to time, including without limitation a highly structured educational environment with 1:1 supervision, a highly structured behavioral intervention program; a 1:1 dedicated aide for 8 hours per school day; specialized instruction for 22.5 hours per week; speech/language therapy for 360 minutes per month; occupational therapy for 720 minutes per month; behavioral support services for 720 minutes per month and school transportation.  DCPS shall consider the Parents' views in selecting an appropriate location for these services, which may be, without limitation, a DCPS or other public facility, a nonpublic day school, another private entity or, with the Parents' consent, the Parents' home.  If reasonably required to maintain Student's safety or the safety of others, DCPS must ensure that Student is provided a 1:2 student to staff ratio during all times in the day education program.  To the extent that providing the temporary setting requires modification of Student's IEP, DCPS shall ensure that Student's IEP team is convened to review and revise the IEP as appropriate;

2.      To the extent DCPS has not already authorized funding for such services, upon receipt of documentation which DCPS may reasonably require, DCPS shall promptly reimburse the Parents their reasonable costs for special education and related services required by the March 2021 IEP, which they have obtained for Student after October 31, 2021, including without limitation tutoring services, OT services, dedicated aides and Student's transportation to and from such services;

3.      Within 21 school days of the date of this decision, subject to obtaining Petitioner's consent, DCPS, in consultation with OSSE shall procure an Independent Education Evaluation (IEE) by a qualified educational consultant, who is experienced in placing students with severe behavioral disabilities in

Case No. 2021-0175
Hearing Officer Determination
March 25, 2022

residential treatment facilities, to assess Student's residential facility needs, make residential treatment centers inquiries on Student's behalf and make recommendations to DCPS and OSSE on residential centers that would be able to provide the services required by Student's IEP and would be willing to consider Student for admission.  In the event that OSSE identifies a suitable residential center location for Student in the meantime, DCPS may truncate performance of this IEE requirement;

4.      Petitioner's request for compensatory education for the denial of FAPE found in this decision is denied without prejudice to his/her right to renew the request for compensatory education from DCPS after Student is placed in a residential treatment facility;

5.      Petitioner's claims against OSSE herein are dismissed and OSSE is dismissed as party respondent, without relieving OSSE of its ongoing responsibility for identifying and paying the costs for a residential treatment center for Student to attend and

6.      All other relief requested by the Petitioner herein is denied.


Date:   __March 25, 2022__              ___s/ Peter B. Vaden_____
                                        Peter B. Vaden, Hearing Officer


## NOTICE OF RIGHT TO APPEAL

        This is the final administrative decision in this matter.  Any party aggrieved by this Hearing Officer Determination may bring a civil action in any state court of competent jurisdiction or in a District Court of the United States without regard to the amount in controversy within ninety (90) days from the date of the Hearing Officer Determination in accordance with 20 U.S.C. § 1415(i).

Case No. 2021-0175
Hearing Officer Determination
March 25, 2022

cc:   Counsel of Record
      Office of Dispute Resolution
      OSSE - SPED
      DCPS Resolution Team
      Nicholas.Weiler@k12.dc.gov
      Josh.Wayne@k12.dc.gov

**APPENDIX A**

**DISTRICT OF COLUMBIA**
**OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION**
Office of Dispute Resolution
1050 First Street, N.E., 3rd Floor
Washington, DC 20002

| | | |
|---|---|---|
| BRAEDEN T. DAVIS, by<br> ANNE and BRANTLEY DAVIS,<br> Attorneys in Fact, | ) ) ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Hearing Officer:  Peter Vaden |
| | ) | |
| DISTRICT OF COLUMBIA<br> PUBLIC SCHOOLS, | ) ) | Case No:  2021-0175 |
| | ) | |
| and | ) | |
| | ) | |
| D.C. OFFICE OF THS STATE<br> SUPERINTENDENT OF EDUCATION, | ) ) | |
| | ) | |
| Respondents. | ) | |

HEARING OFFICER DETERMINATION
PERSONAL IDENTIFICATION INFORMATION

| | |
|---|---|
| Student | Braeden Davis |
| Age | 21 years old |
| Birthday | May 12, 2000 |
| Student ID Number | 8843280886 |
| Mother | Anne Davis |
| Father | Brantley Davis |
| Tutoring Manager | Virginia Babin McDonald |
| Special Programs Manager | Katie Reda |
| Private Occupational Therapist (OT) | Katherine Phillips |
| Educational Consultant | Michelle Davis |
| Special Education Attorney | Roberta Gambale |
| Resolution Team Director | Nicholas Weiler |
| Resolution Specialist | Camille Lesseig |
| Residential Treatment Center 2 (RTC-2) | Community Services for Autistic Adults and Children (CSAAC) |
| Residential Treatment Center 1 (RTC-1) | Monarch Center |
| Hotel 1 | Staybridge Suites |
| Hotel 2 | Embassy Suites |
| District Hospital | Sibley Hospital |

| City School 1 | Wilson SHS |
|---|---|
| | |
| Petitioner's Counsel | Diana Savit, Esq. |
| Petitioner's Co-Counsel | Charles Moran, Esq. |
| DCPS' Counsel | Quinne Harris-Lindsey, Esq. |
| OSSE's Counsel | Laurie Wilkerson, Esq. |